## R. S. NEWTON *v.* D. W. CLARK, ET AL.

Where money is raised by mortgage upon separate property of the wife, and is received by the husband, as the wife's agent, to be reinvested for her benefit, and is so reinvested, the fact of its passing through the hands of the husband, is not such a change of its character as entitles his creditors to subject it to the payment of their claims.

SPECIAL TERM.—Action to subject moneys and credits of the wife to the satisfaction of a judgment obtained against the husband.

The facts sufficiently appear in the decision.

*Mills & Hoadly, Ketchum & Headington* and *J. B. Eaton,* for plaintiff.

*Corwin & Probasco* and *Stallo & Leake,* for defendants.

STORER, J. The plaintiff files his petition, averring that he has recovered a judgment against the defendant, Clark, for $803, in the court of common pleas of Hamilton county; that execution has issued thereon, and no property, real or personal, can be found to satisfy it. He further charges that Gregory, one of the defendants, is indebted to Clark, or holds in trust for him, a large sum of money that ought to be subjected to the payment of the plaintiff's judgment.

The defendants severally answer, denying the allegations of the petition; and testimony has been offered to establish them.

It appears that Clark, several years prior to the recovery of the judgment against him, was married to the widow of John Taylor, who then held, in her own right, a valuable real estate; that during her coverture, she joined her husband, Clark, in mortgaging her estate, the money raised upon which, by her consent, was invested in other property for her benefit, in the transfer of which the agency of Gregory appears also to have been employed for the benefit of Mrs. Clark. The money loaned upon the mortgage was received by the husband, who acted throughout the transaction as the agent of his wife.

It is claimed by the plaintiff that the possession of the money, derived from the loan, having been in the defendant, Clark, it became thereby his own property; that, being thus reduced into possession by him, the right of the wife was *eo instanti* divested, and the funds became subject to the payment of the husband's debts.

At common law, there can be no doubt that the separate property of the wife, at the time of her marriage, if afterward reduced to the husband's possession, vests in him, and will pass to his heirs; and the rule applicable to personal chattels applies to the proceeds of the wife's real estate, if they come to the husband's hands without fraud or coercion on his part. The fact that the husband controls the fund, is the best evidence of his right to claim it. It is presumed that he then holds it with the approbation of his wife, who is regarded, as to her separate estate, as a *feme sole*, and may dispose of it as she pleases.

But the rule referred to is greatly modified, if not entirely changed, in Ohio by statute.

By the law of 1846, Swan, 712, it is enacted that the interest of the husband in his wife's real estate, whether owned by her at the time of marriage, or subsequently acquired, shall not be taken " by any process of law, or in

chancery, for the payment of his debts, during the life of the wife, or the life or lives of the heirs of her body." It is also provided, that the husband shall not alien his interest in his wife's real estate during her life, or that of the heirs of her body; and all such alienations, if made, are declared void. It is further provided, that the husband's interests in the personal estate of the wife, of every kind, "shall not be liable for his debts, unless he shall have first reduced the same to his possession, so as, by the rules of law, to have become the owner thereof, in his marital right."

The legislature have thus very clearly indicated that it was their intention to save the estates of married women, not only from being subjected to pay the debts of their husbands, but to prevent, altogether, the disposition thereof by the husband, to the extent, even, of his own life-estate. Their object, undoubtedly, was to keep the wife's property where the husband found it; and though, by his wife's permission, he may enjoy the possession of her estate and take the profits, he is her trustee, nevertheless, and in a proper case she may compel an account and secure the fund, if his management has put it in jeopardy, or impaired its value.

We suppose that the mere possession of the fund by the husband, however it might formerly have conferred title to the property, can not, under the laws we have referred to, create a right on his part, to control the fund for his own purposes; much less to subject it to his debts. There must be, in every case, the assent of the wife to the disposition of her property by the husband; and this may be either express or implied.

If she voluntarily bestows it, she may impart, as well to him as to a stranger, what was only hers to grant. If she permits him to use her personal property with the knowledge of the purposes to which it is applied, and third parties are defrauded, or their interests injuriously affected, she will be stopped from setting up her claim; 2 Ohio, 506, 510, *Smiley and wife* v. *Wright;* 6 Ves. 174, *Evans* v. *Bicknell;* 1 Dru. & Warren, 167, *Jones* v. *Kearney;* in which Lord Chan. Sugden, states the principle fully.

The wife, then, must be regarded as holding the exclusive right over her separate property. By section 28 of the code, for all practical purposes, in the protection of her estate, she is declared to be a *feme sole*, and may treat her husband accordingly, by suit in the courts; and by section 39, if a *feme sole* marries *pendente lite*, the action does not abate, though at common law, such an event would destroy the remedy in the name of the wife; and upon the idea of a legal merger, give the right to the husband, not only to sue in his own name, but to dismiss any suit that may have been brought in that of his wife.

If such is the present condition of the wife, she may well direct the mode in which her property may be invested; and there can be no impropriety in deputing to her husband the power to place her funds where they will be the safest and most profitably secured.

On general principles, the husband, as well as the wife, may be the agents of each other, and when confidence is required, and delicate fiduciary relations necessarily arise, it is but just that those who are most deeply interested, should have the right to select their trustees. The strongest security for the faithful performance of duty may well be the mutual attachments that consecrate the marriage tie, a more sacred obligation than any merely formal bond, however large the penalty.

The whole subject of the wife's right to appoint her trustee, his duties, and her privileges, are thoroughly discussed in the late cases, 3 Barb. S. C. 110, *Merritt* v. *Lyon;* 4 Ib. 546, *Strong* v. *Skinner.* We adopt the conclusion of the court in these cases as our idea of the law.

We find, in the evidence before us, nothing by which we can charge the property in controversy with the debts of the husband.

The petition is dismissed.